25798. WATTS v. GAINES et al.

UNDERCOFLER, Justice. In *Gaines v. Watts,* 224 Ga. 321 (161 SE2d 830) this court held that a motion to dismiss the complaint of James S. Gaines and Boyd E. Cupp against Earl L. Watts should not have been sustained by the trial court. That complaint sought an injunction to prevent the foreclosure of a certain note and security deed, damages, attorney's fees and general relief. After the decision of this court was made the judgment of the trial court, the plaintiffs amended their petition seeking the cancellation of the warranty deed given them by the defendant, and the cancellation of the note and security deed they had given to the defendant. They also sought a judgment for all moneys expended by them as a result of this transaction, interest, the cost of litigation including reasonable attorney's fees, and punitive damages.

Based on the jury's verdict, the trial court entered a judgment declaring null and void the warranty deed, security deed and note as sought by the plaintiffs and decreed that the plaintiffs have judgment against the defendant in the amount of $10,097.81 as restitution of the consideration previously paid to the defendant, $2,500 as expenses of litigation including attorney's fees, $500 exemplary damages, and the costs of court.

The defendant appeals to this court. *Held:*

1. The contract of sale entered into between the parties contains the following provision: "No representation, promise, or inducement not included in this contract shall be binding upon any party hereto." The contract was prepared by the attorney for the plaintiffs and was not a part of the complaint when the motion to dismiss was before this court previously. The defendant contends that this provision in the contract bars the plaintiffs' claim that they relied on his misrepresentation that the property was licensed as a rooming house. Irrespective of this representation made by the de-

504

fendant to the plaintiffs, the other evidence in the record is sufficient to show actual fraud under *Code* § 37-705 which provides: "Fraud may be consummated by signs or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another." *Code* § 37-709 also provides: "Fraud will authorize equity to annul conveyances, however solemnly executed. . ."

The jury was authorized to find from the evidence that: The defendant had been in the home improvement business for 20 years; he purchased the property involved in February, 1966; after his purchase he was informed by the city building inspector that he had to have a license to operate a rooming house; the defendant paid $5 for an application for such a license; after making such application he was informed by the building inspector that the building needed fire walls and 10 parking spaces before it could be licensed as a rooming house; he informed the inspector that he would postpone his attempts to license the premises for a rooming house until he "got everything worked out"; the defendant informed the inspector later that he would abandon his plan to use the facilities as rooming house; the defendant operated the premises as a rooming house through the months of May and June; his business card advertised that he had rooms to rent; the property had a lighted sign in front of it which advertised the fact that rooms were available for rent; a sign advertising rooms for rent was always there when the plaintiffs inspected the premises; the defendant received two citations from the city regarding the violation of the building code of the city; he was found guilty of these offenses on June 22, 1966, five days prior to the sale of the property to the plaintiffs; he did not reveal these facts to the plaintiffs; the negotiations for the purchase of the property continued for about ten days; the plaintiffs had a real estate man, a building contractor and their attorney investigate the property for them; the plaintiffs interviewed the tenants and the manager of the premises; the manager furnished the plaintiffs with a list of tenants which showed the names and monthly rental for the property to be almost $2,000 per month as it was then used for a rooming house and apartments; the property had all kinds of signs in the yard advertising rooms for rent and a large lighted sign was there before and after the purchase of the property on June 27, 1966; two of the roomers worked

for the defendant and did not pay rent but were "planted" there by the defendant; by letter dated July 26, 1966, the building inspector for the City of Atlanta informed them that the premises were in violation of the zoning ordinance and could not be used for a rooming house; the plaintiffs did not know the premises could not be used as a rooming house until this letter was received; the property would make a profit each month of about $1,000 if it could be used as a rooming house; it could not produce enough income as apartment units to even make the necessary mortgage payments each month; and the plaintiffs did not know that the defendant had been cited for violation of the zoning ordinances. On offer of the plaintiffs to make restoration, the defendant refused to rescind the transaction.

The evidence supports the finding of the jury that the defendant received over $10,000 in cash from the plaintiffs and a third-mortgage from them in the amount of $15,000. Because of the default in payment of the third mortgage, the defendant foreclosed on the property after the plaintiffs had filed their complaint against him. The defendant re-acquired the property without the payment of any consideration and retained the money which the plaintiffs had paid him in cash.

The above evidence was sufficient to authorize the jury to find for the plaintiffs. It follows that the trial judge did not err in refusing to direct a verdict for the defendant.

2. During the trial of this case, evidence was introduced which showed the defendant had been convicted of a crime involving moral turpitude. Objection was made thereto on the basis that it placed in issue the character of the defendant, was irrelevant, and not a proper basis for impeachment of the defendant. The defendant contends that the admission of this evidence was error. The trial court did not err in overruling the objection.

"The fact that a witness has been convicted of a crime involving moral turpitude may be considered in determining his credibility. *Shaw v. State,* 102 Ga. 660 [29 SE 477]." *Powell v. State,* 122 Ga. 571 (2) (50 SE 369).

There is no merit in this enumeration of error.

3. The defendant contends that the trial court erred in refusing to admit into evidence for the purpose of impeachment copies of pleadings which showed that the plaintiffs had been sued by a tenant for negligence in failing to properly maintain a

walkway when one of the plaintiffs had stated on oral examination that they had not been sued. The evidence showed that this suit had been settled by his attorney and that the witness did not realize that this was in the nature of a "suit." The error, if any, was harmless.

4. There has been no argument and citation of authorities in this court on the remaining enumerations of error and they are deemed abandoned.

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 12, 1970—DECIDED JUNE 9, 1970—
REHEARING DENIED JUNE 25, 1970.

Earl L. Watts, *pro se*, George C. Walsh, Richard N. Hubert, for appellant.

Rich, Bass, Kidd & Broome, C. Richard Avery, for appellees.